IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ARKANSAS DEPARTMENT OF ENERGY AND ENVIRONMENT, DIVISION OF ENVIRONMENTAL QUALITY, <br>                         Plaintiffs, <br><br> v. <br><br> GEORGIA PACIFIC CHEMICALS LLC, GEORGIA-PACIFIC CONSUMER OPERATIONS LLC, <br>                        Defendants. | Case No. 1:18-cv-01076-SOH |

**AMENDED CONSENT DECREE**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION AND VENUE | 3 |
| III. | SETTLING DEFENDANTS | 3 |
| IV. | APPLICABILITY | 4 |
| V. | DEFINITIONS | 5 |
| VI. | CIVIL PENALTY | 7 |
| VII. | COMPLIANCE REQUIREMENTS | 9 |
| VIII. | SUPPLEMENTAL ENVIRONMENTAL PROJECTS | 15 |
| IX. | ENVIRONMENTAL MITIGATION | 20 |
| X. | REPORTING REQUIREMENTS | 21 |
| XI. | PERMITS | 25 |
| XII. | STIPULATED PENALTIES | 27 |
| XIII. | FORCE MAJEURE | 31 |
| XIV. | DISPUTE RESOLUTION | 33 |
| XV. | INFORMATION COLLECTION AND RETENTION | 36 |
| XVI. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 38 |
| XVII. | COSTS | 40 |
| XVIII. | NOTICES | 40 |
| XIX. | EFFECTIVE DATE | 41 |
| XX. | RETENTION OF JURISDICTION | 41 |
| XXI. | MODIFICATION | 42 |
| XXII. | TERMINATION | 42 |
| XXIII. | PUBLIC PARTICIPATION | 43 |
| XXIV. | SIGNATORIES/SERVICE | 44 |
| XXV. | INTEGRATION | 44 |
| XXVI. | FINAL JUDGMENT | 45 |
| XXVII. | 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION | 45 |
| XXVIII. | APPENDICES | 45 |
| APPENDIX A | | 51 |
| APPENDIX B | | 58 |
| APPENDIX C | | 59 |

This Amended Consent Decree is made and entered into by and between the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the Arkansas Department of Energy and Environment, Division of Environmental Quality ("DEQ"), and Georgia-Pacific Chemicals LLC ("GP Chemical") and Georgia-Pacific Consumer Operations LLC ("GP Consumer," and together with GP Chemical, "Settling Defendants").

## I.   BACKGROUND

A.     On December 14, 2018, contemporaneously with the lodging of a Consent Decree, the United States, on behalf of EPA, and DEQ filed a Complaint in this action against Settling Defendants alleging that they violated Sections 113(b) and 112(r)(1) of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §§ 7413(b) and 7412(r)(1) as well as Arkansas Code Annotated §§ 8-4-103 *et seq*.

B.     GP Chemical owns and operates a chemical manufacturing facility, and GP Consumer owns and operates a pulp/paper manufacturing facility, and the facilities are located on adjoining properties in Crossett, Arkansas. The Complaint alleges that GP Consumer has operated in violation of the following provisions and regulatory schemes: (1) Section 111 of the CAA, 42 U.S.C. § 7411, and the New Source Performance Standards ("NSPS") promulgated thereunder at 40 C.F.R. § 60, Subpart BB, and incorporated by Arkansas Pollution Control and Ecology Commission ("APC&EC") Regulation Number 26.302(B); (2) Section 112 of the CAA, 42 U.S.C. § 7412, and the National Emission Standards for Hazardous Air Pollutants ("NESHAP") promulgated thereunder at 40 C.F.R. Part 63, Subparts A, S, and MM, and incorporated by APC&EC Regulation Number 26.302(C); and (3) the Chemical and Accident Prevention Provisions for Air Programs promulgated thereunder at 40 C.F.R. Part 68, Subpart D.

1

      C.      Additionally, the Complaint alleges that GP Chemical has operated in violation of the following provisions and regulatory schemes: (1) Section 112 of the CAA, 42 U.S.C. § 7412, the NESHAP promulgated thereunder at 40 C.F.R. Part 63, Subparts G, H, and FFFF, and incorporated by APC&EC Regulation Number 26.302(C); and (2) the Chemical and Accident Prevention Provisions for Air Programs promulgated thereunder at 40 C.F.R. Part 68, Subparts D and H.

      D.      On June 4, 2019, Settling Defendants announced the planned shutdown of a portion of Consumer Facility to take place at end of 2019. Because the shutdown affects and alters Settling Defendants' obligations under the Consent Decree lodged on December 14, 2018, the Parties have negotiated and agreed to this Amended Consent Decree.

      E.      The Parties agree that the United States' and DEQ's filing of the Complaint and entry into this Amended Consent Decree constitute diligent prosecution by the United States and DEQ, under Section 304(b)(1)(B) of the CAA, 42 U.S.C. § 7604(b)(1)(B), of all matters alleged in the Complaint and addressed by this Amended Consent Decree through the date of lodging of this Amended Consent Decree.

      F.      Settling Defendants do not admit any liability to the United States or DEQ arising out of the allegations presented in the Complaint. The Parties recognize, and the Court by entering this Amended Consent Decree finds, that this Amended Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Amended Consent Decree is fair, reasonable, and in the public interest.

      NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to
28 U.S.C. §§ 1331, 1345, and 1355, and Sections 111, 112, and 113(b), 42 U.S.C. §§ 7411,
7412, and 7413(b) of the Act, and over the Parties.  Pursuant to 28 U.S.C. § 1367, this Court has
supplemental jurisdiction over the state and local law claims asserted by DEQ.  Venue lies in this
District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b); 28 U.S.C. §§ 1391(b) and
(c) and 1395(a) because the violations alleged in the Complaint are alleged to have occurred in,
and Settling Defendants conduct business in, this judicial district.  For purposes of this Amended
Consent Decree, or any action to enforce this Amended Decree, Settling Defendants consent to
the Court's jurisdiction over this Amended Decree and any such action and over Settling
Defendants and consent to venue in this judicial district.

2.      For purposes of this Amended Consent Decree, Settling Defendants agree that the
Complaint states claims upon which relief may be granted pursuant to Section 113 of the CAA,
42 U.S.C. § 7413(b).

## III.   SETTLING DEFENDANTS

3.      Settling Defendants are GP Chemical and GP Consumer. Each is a Delaware
limited liability company and each owns and operates one of two adjacent facilities in Crossett,
Arkansas. Pulp and paper operations occur at the facility owned by GP Consumer located at 100
Mill Supply Road. Chemical operations occur at the facility owned by GP Chemical located at
124 Paper Mill Road.

3

## IV.    APPLICABILITY

4.    The obligations of this Amended Consent Decree apply to and are binding upon the United States, DEQ, and upon Settling Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

5.    Settling Defendants are and shall be jointly and severally responsible for compliance with this Amended Consent Decree.

6.    No transfer of ownership or operation of the Facilities, or any portion of the Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Settling Defendants of their obligation to ensure that the terms of the Amended Decree are implemented. At least 15 days prior to such transfer, Settling Defendants shall provide a copy of this Amended Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6, DEQ, the United States Attorney for the Western District of Arkansas, and the United States Department of Justice, in accordance with Section XVIII (Notices). Any transfer of, or attempt to transfer, ownership or operation of the Facilities, or any portion of the Facilities, without complying with this Paragraph constitutes a violation of this Amended Decree.

7.    Settling Defendants shall provide a copy of this Amended Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Amended Decree, as well as to any contractor retained to perform work pursuant to Paragraph 19 of Section VII (Compliance Requirements) or Section VIII (Supplemental Environmental Projects) of this Amended Consent Decree. Settling Defendants

4

shall condition any such contract upon performance of the work in conformity with the terms of this Amended Consent Decree.

8.      In any action to enforce this Amended Consent Decree, Settling Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Amended Consent Decree.

9.      Nothing in this Amended Consent Decree shall be construed to require the Settling Defendants to continue to operate the Facilities.  The idling, closure or cessation of operations at the Chemical Facility or the Consumer Facility, or any portion of the Facilities, shall not relieve Settling Defendants of any applicable requirements under the Amended Consent Decree, except as expressly provided herein.

## V.   DEFINITIONS

10.     Terms used in this Amended Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Amended Decree.  Whenever the terms set forth below are used in this Amended Consent Decree, the following definitions shall apply:

"DEQ" shall mean the Arkansas Department of Energy and Environment, Division of Environmental Quality;

"Calendar Year" shall mean the period commencing on January 1 and ending on December 31 of the same year;

"Complaint" shall mean the Complaint filed by the United States and DEQ in this action;

"Amended Consent Decree" or "Amended Decree" shall mean this Amended Decree, and all appendices attached hereto;

5

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Amended Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIX;

"Facilities" shall mean the pulp and paper manufacturing facility owned and operated by GP Consumer ("Consumer Facility") and the chemical manufacturing facility owned and operated by GP Chemical ("Chemical Facility"), both of which are located in Crossett, Arkansas;

"GP Consumer Digester" shall mean the No. 1, No. 2, No. 3, No. 4, No. 5, No. 6, No. 7, No. 8, No. 9, No. 10, No. 11, No. 12 or No. 13 digester at the Consumer Facility.  All digesters shall be referred to collectively as "the GP Consumer Digesters";

"GP Consumer Washer" shall mean the GP-2 or GP-3 brown stock washer at the GP Consumer Facility.  Both washers shall be referred to collectively as "the GP Consumer Washers";

"Paragraph" shall mean a portion of this Amended Decree identified by an Arabic numeral;

"Parties" shall mean the United States, DEQ, and Settling Defendants and each shall be a Party;

"Permanent Shutdown" or "Permanently Shutdown" shall mean the cessation of operations of an emission source(s) and surrender of all corresponding air permits or air permit conditions for the emission source(s) including, if applicable, deregistration of the Facilities, or any portion

6

of the Facilities, from any provisions of 40 C.F.R. § 68, Subpart D, promulgated under Section 112(r) of the CAA, 42 U.S.C. § 7412(r). For purposes of this definition, the Permanent Shutdown of an emission source shall be deemed to have occurred as of the latest of the date of (i) the cessation of operations of the emission source; (ii) the surrender of air permits or air permit conditions; and (iii) the deregistration submittal in accordance with 40 C.F.R. § 68.190(c) of one or more of the Facilities from any provisions of 40 C.F.R. § 68, Subpart D, promulgated under Section 112(r) of the CAA, 42 U.S.C. § 7412(r), if applicable;

"Plaintiffs" shall mean the United States and DEQ;

"Pulp Mill" shall mean the collection of equipment and processes using the kraft process to convert wood chips into pulp for manufacturing paper products;

"Section" shall mean a portion of this Amended Decree identified by a roman numeral;

"Settling Defendants" shall mean Georgia-Pacific Chemicals LLC and Georgia-Pacific Consumer Operations LLC;

"Shutdown Facilities" shall mean those Facilities or portion of the Facilities that have been Permanently Shutdown;

"State" shall mean the State of Arkansas;

"Title V Permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. §§ 7661–7661f, implementing regulations, and analogous provisions of federally approved state permit programs; and

"United States" shall mean the United States of America, acting on behalf of EPA.

## VI. CIVIL PENALTY

11.     Within 30 Days after the Effective Date, Settling Defendants shall pay the sum of $600,000 as a civil penalty, together with interest accruing from the date on which the Amended

7

Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging. Settling Defendants are jointly and severally liable for this civil penalty. This sum shall be paid in the following amounts:

      a.    $300,000 to the United States.

      b.    $300,000 to the Arkansas Department of Energy and Environment, Division of Environmental Quality.

    12.    Settling Defendants shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions promptly provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Arkansas after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Settling Defendants shall use to identify all payments required to be made in accordance with this Amended Consent Decree. The FLU will provide the payment instructions to:

> Anthony Robinson
> Manager - Environmental Mill Services
> Georgia-Pacific Consumer Operations LLC
> 100 Mill Supply Road
> P.O. Box 3333
> Crossett, AR 71635
> (870) 415-6099
> Anthony.Robinson1@gapac.com

on behalf of Settling Defendants. Settling Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVIII (Notices). At the time of payment, Settling Defendants shall send notice that payment has been made: (i) to EPA via email at

8

cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W.

Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular

mail in accordance with Section XVIII; and (iii) to EPA in accordance with Section XVIII.  Such

notice shall state that the payment is for the civil penalty owed pursuant to this Amended

Consent Decree and shall reference the civil action case name and number, CDCS Number and

DOJ case number 90-5-2-1-11705.

13.     Settling Defendants shall pay the civil penalty due to DEQ by check, payable to:

"Arkansas Department of Energy and Environment, Division of Environmental Quality."  At the

time of payment, Settling Defendants shall send the check, together with a transmittal letter in

accordance with Section XVII of this Amended Decree (Notices); by mail to:

> The Arkansas Department of Energy and Environment, Division of
> Environmental Quality
> 5301 Northshore Drive
> North Little Rock, Arkansas 72118-5317

14.     Settling Defendants shall not deduct any penalties paid under this Amended

Decree pursuant to this Section or Section XII (Stipulated Penalties) in calculating its federal or

State income tax.

## VII.   COMPLIANCE REQUIREMENTS

15.     GP Consumer shall comply with the CAA, as required by the following

provisions:

> a.     NSPS codified at 40 C.F.R. § 60, Subpart BB, promulgated under Section
>        111 of the CAA, 42 U.S.C. § 7411;
>
> b.     The NESHAP for Source Categories or maximum achievable control
>        technology ("MACT") standards codified at 40 C.F.R. § 63, Subpart A,

9

       promulgated under Section 112 of the CAA, 42 U.S.C. § 7412;

  c.  The NESHAP for the Pulp and Paper Industry codified at 40 C.F.R. § 63, Subpart S, promulgated under Section 112 of the CAA, 42 U.S.C. § 7412;

  d.  The NESHAP for Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone SemiChemical Pulp Mills codified at 40 C.F.R. § 63, Subpart MM, promulgated under Section 112 of the CAA, 42 U.S.C. § 7412; and

  e.  The Chemical Accident Prevention Provisions codified at 40 C.F.R. § 68, Subpart D, promulgated under Section 112(r) of the CAA, 42 U.S.C. § 7412(r).

16.  GP Chemical shall comply with the CAA, as required by the following provisions:

  a.  The NESHAP for Organic Hazardous Air Pollutants standards codified at 40 C.F.R. § 63, Subparts G and H (the "HON"), promulgated under Section 112 of the CAA, 42 U.S.C. § 7412;

  b.  The NESHAP for Miscellaneous Organic Chemical Manufacturing codified at 40 C.F.R. § 63, Subpart FFFF, promulgated under Section 112 of the CAA, 42 U.S.C. § 7412; and

  c.  The Chemical Accident Prevention Provisions codified at 40 C.F.R. § 68, Subparts H and D, promulgated under Section 112(r) of the CAA, 42 U.S.C. § 7412(r).

17.     Prior to lodging of this Amended Consent Decree, without any admission of liability or of violation of law, GP Consumer completed the following improvements at its Consumer Facility:

    a.    Replaced the D0 seal tank on the 1B bleach line used in paper bleaching process;

    b.    Completed the installation of PVC drain lines on the hardwood bleach plant scrubber booster fan and installation of seal loops for the vent drain line from the hardwood bleach plant scrubber booster fan;

    c.    Updated the Consumer Facility's Leak Detection and Repair plan to include monitoring of the blow heat condensate pump tank and methanol storage tank; and

    d.    Completed a new performance test of the bleach plant scrubber to determine chlorine concentrations in the vent stream.

18.     Prior to lodging of this Amended Consent Decree, without any admission of liability or of violation of law, GP Chemical completed the following improvements at the Chemical Facility:

    a.    GP Chemical submitted a revised Miscellaneous Organic NESHAP ("MON") Notification of Compliance Status;

    b.    GP Chemical adopted new procedures into its ongoing Leak Detection and Repair ("LDAR") monitoring program. Specifically, GP Chemical began taking readings using a Photoionization Detector ("PID") for components in formaldehyde service that are subject to instrument monitoring under applicable law; and

11

        c.       GP Chemical revised its compliance reporting methodology so that its MACT semiannual reports will utilize a more representative period of oxidizer maintenance downtimes.

19.     GP Consumer shall implement the following at the Consumer Facility and provide a report to EPA after completion of each task below:

        a.       For GP Consumer Digesters, GP Consumer shall:

          (1)       No later than 30 days after the Effective Date, implement an operations and maintenance program that includes the removal, rebuilding, and reinstallation or replacement of the capping valves located on all thirteen (13) GP Consumer Digesters within 180 days of the Effective Date and establish a 2-year rotation for future capping valve rebuilds or replacements in a manner consistent with safety and good air pollution control practices for minimizing emissions as set forth in 40 C.F.R. §§ 60.11(d), 63.6(e), and 60.453(q);

          (2)       No later than 180 days after the Effective Date, apply for a Title V Permit (or modify existing permit) incorporating the operations and maintenance program of Paragraph 19(a)(1) as described in Section XI (Permits) below; and

          (3)       No later than 30 days after the Effective Date, ensure that all Hazardous Air Pollutant ("HAP") emissions from GP Consumer Digesters, except from the capping valves, are vented into a closed-vent system and routed to a control device meeting the

12

requirements of 40 C.F.R. § 63.443(c), and that the operations and
maintenance program described in Paragraph 19(a)(1) is
implemented to minimize any fugitive emissions of regulated
pollutants from the capping valves while under pressure.

b.   For GP Consumer Washers.

(1)   On September 25, 2018, EPA Region 6 determined that an
exemption from the NSPS Subpart BB standard for Total Reduced
Sulfur is justified for GP Consumer Washers.  On July 31, 2017,
EPA approved GP Consumer's proposal requesting use of the
Clean Condensate Alternative compliance option under NESHAP
Subpart S, 40 C.F.R. § 63.447, as an alternative to controlling HAP
emissions from other emission sources required to comply with the
emission control requirements of 40 C.F.R. § 63.443(a)(1)(iii).

(2)   GP Consumer shall:

(a)   No later than 180 days after the Effective Date, apply for
the requisite air permit (or modification to the existing
permit), as described in Section XI (Permits) below, to
allow for the construction, installation, and operation of a
GP Consumer Washers improvement project at GP-2 and
GP-3 to control emissions from the washers by collecting
exhaust gases from the entrance/feed roll of GP-2 and GP-3
and routing these gases to the existing non-condensable gas
incinerator or other control device meeting the

13

requirements of 40 C.F.R. § 60.283(a)(1).

      (b)     Within 365 days or at the next scheduled Pulp Mill outage, whichever is sooner, following receipt of authorization from the permitting authority to proceed with the improvement project described in Paragraph 19(b)(2)(a), GP Consumer shall complete the construction and installation associated with the project and commence operation of the newly installed equipment.

c.     For Incinerator Emissions. Within 30 days of the Effective Date, GP Consumer shall implement standard operating procedures that require the Pulp Mill to shut down during times of incinerator downtime or outage, as necessary, to ensure periods of excess HAP emissions from the incinerator do not exceed 4% of the total operating time as required by 40 C.F.R. § 63.443(e)(3).

d.     For D2 Upflow Tower on Line 2 bleach plant. Within 30 days of the Effective Date, GP Consumer shall design and install a proximity switch device for the D2 Upflow Tower's pressure relief device. This switch must provide continuous monitoring of the valve's status to ensure that HAP emissions are enclosed and vented into a closed-vent system, and routed to a control device, as required in 40 C.F.R. § 63.445(b).

20.     Notwithstanding the foregoing paragraphs of Section VII, the Permanent Shutdown of the Facilities, or any portion of the Facilities, will be deemed to satisfy all requirements of Section VII of this Amended Consent Decree applicable to those Shutdown

14

Facilities. If Settling Defendants elect to Permanently Shutdown the Facilities, or any portion of the Facilities, then Settling Defendants must provide written advance notice of the proposed shutdown to the Plaintiffs in accordance with Section XVIII (Notices) no later than 30 days after the Effective Date or 30 days before Settling Defendants commence activities to Permanently Shutdown the Facilities or any portion of the Facilities, whichever is later. Settling Defendants shall provide contemporaneous notice to the Plaintiffs in accordance with Section XVIII (Notices) when Settling Defendants (i) cease operation of an emissions source, (ii) submit applications to surrender air permits or air permit conditions; and (iii) submit a notice to deregister from any provisions of 40 C.F.R. Part 68, Subpart D, promulgated under Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), if applicable.

## VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECTS

21.   Settling Defendants shall implement the Supplemental Environmental Projects ("SEPs") in accordance with the requirements and schedules of either Appendix A or, as provided in Paragraph 34, Appendix C.

22.   Settling Defendants are responsible for the satisfactory completion of the SEPs in accordance with the requirements of this Amended Decree and Appendix A or Appendix C. Settling Defendants may use contractors or consultants in planning and implementing the SEPs.

23.   The SEPs described in Appendix A are as follows:

  a. Pulp Mill Collection Tank ("Tank SEP") (Appendix A, Paragraphs A.1-5)

  b. Oxygen Injection System ("Injection SEP") (Appendix A, Paragraphs B.1-5)

  c. Fenceline $H_2S$ Monitoring ("Monitoring SEP") (Appendix A, Paragraphs C.1-5)

15

24.     With regard to the SEPs in Appendix A, Settling Defendants certify the truth and accuracy of each of the following:

a.     that all cost information provided to EPA in connection with EPA's approval of the SEPs is complete and accurate and that Settling Defendants in good faith estimate that the costs to implement the SEPs are $1.0 million for the Tank SEP, $500,000 for the Injection SEP, and $300,000 for the Monitoring SEP;

b.     that, as of the date of executing this Amended Decree, Settling Defendants are not required to perform or develop the SEPs by any federal, state, or local law or regulation and are not required to perform or develop the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEPs are not projects that Settling Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Amended Decree;

d.     that Settling Defendants have not received and will not receive credit for the SEPs in any other enforcement action;

e.     that Settling Defendants will not receive any reimbursement for any portion of the SEPs from any other person; and

f.     that Settling Defendants are not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEPs listed in Paragraph 23.

For purposes of these certifications, the term "open federal financial assistance

16

transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

25.     The SEPs described in Appendix C are as follows:

     a.     Epi Storage SEP (Appendix C, Paragraphs A.1-5)

     b.     Vacuum Pump SEP (Appendix C, Paragraphs B.1-5)

     c.     Emergency Response SEP (Appendix C, Paragraphs C.1-5)

26.     With regard to the SEPs in Appendix C, Settling Defendants certify the truth and accuracy of each of the following:

     a.     that all cost information provided to EPA in connection with EPA's approval of the SEPs is complete and accurate and that Settling Defendants in good faith estimate that the costs to implement the SEPs are $350,000 for the Epi Storage SEP, $350,000 for the Vacuum Pump SEP, and $1,100,000 for the Emergency Response SEP;

     b.     that, as of the date of executing this Amended Decree, Settling Defendants are not required to perform or develop the SEPs by any federal, state, or local law or regulation and are not required to perform or develop the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any forum;

     c.     that the SEPs are not projects that Settling Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Amended Decree;

     d.     that Settling Defendants have not received and will not receive credit for

17

the SEPs in any other enforcement action;

e.    that Settling Defendants will not receive any reimbursement for any
      portion of the SEPs from any other person; and

f.    that Settling Defendants are not a party to any open federal financial
      assistance transaction that is funding or could fund the same activity as the
      SEPs listed in Paragraph 25.

For purposes of these certifications, the term "open federal financial assistance
transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan
guarantee, or other mechanism for providing federal financial assistance whose
performance period has not yet expired.

27.    SEP Completion Report

a.    Within 45 days after the date set for completion of each SEP, Settling
      Defendants shall submit a SEP Completion Report to the United States, in
      accordance with Section XVIII (Notices).  The SEP Completion Report
      shall contain the following information:

      (1)    a detailed description of the SEP as implemented;

      (2)    a description of any problems encountered in completing the SEP
             and the solutions thereto;

      (3)    an itemized list of all eligible SEP costs expended;

      (4)    certification that the SEP has been fully implemented pursuant to
             the provisions of this Amended Decree;

      (5)    a description of the environmental and public health benefits
             resulting from implementation of the SEP (with a quantification of

18

the benefits and pollutant reductions, if feasible); and

(6)     any additional items detailed in Appendix A or Appendix C.

28.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Settling Defendants' completion report.

29.     After receiving each SEP Completion Report, the United States shall notify Settling Defendants whether or not they have satisfactorily completed the SEP. If Settling Defendants have not completed the SEP in accordance with this Amended Consent Decree, stipulated penalties may be assessed under Section XII (Stipulated Penalties).

30.     Disputes concerning the satisfactory performance of a SEP and the amount of eligible SEP costs may be resolved under Section XIV (Dispute Resolution). No other disputes arising under this Section shall be subject to Dispute Resolution.

31.     Each submission required under this Section shall be signed by officials for Settling Defendants with knowledge of the SEPs and shall bear the certification language set forth in Paragraph 42.

32.     Any public statement, oral or written, in print, film, or other media, made by Settling Defendants making reference to the SEPs under this Amended Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, *United States v. Georgia-Pacific Chemicals LLC and Georgia Pacific Consumer Operations LLC*, taken on behalf of the U.S. Environmental Protection Agency and the Arkansas Department of Energy and Environment, Division of Environmental Quality under the Clean Air Act."

19

33.     For federal income tax purposes, Settling Defendants agree that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEPs.

34.     Notwithstanding the foregoing paragraphs of this Section VIII, if Settling Defendants Permanently Shutdown the Facilities or any portion of the Consumer Facility, the SEPs set forth in Appendix A of this Amended Consent Decree along with the requirements set forth in Section VIII as applied to those SEPs shall no longer apply.  In such instance, and in lieu of completing the SEPs set forth in Appendix A of this Amended Consent Decree, Settling Defendants shall perform the alternate SEPs set forth in Appendix C of this Amended Consent Decree and comply with the requirements of Section VIII as applied to those SEPs.  The Permanent Shutdown of the Facilities, or any portion of the Facilities, shall not be considered abandonment of the Appendix A SEPs under Paragraph 56(b).  No amount of costs incurred to implement any of the Appendix A SEPs shall be credited toward the obligation to perform Appendix C SEPs imposed by this Paragraph.

## IX.     ENVIRONMENTAL MITIGATION

35.     For the purpose of mitigating environmental harm allegedly caused by the operations of Settling Defendants, Settling Defendants shall implement the Environmental Mitigation Project ("Project") described in Appendix B of this Amended Consent Decree in accordance with the timelines and requirements specified therein.  The Project is not in lieu of penalties.

36.     Settling Defendants certify that Settling Defendants are not otherwise required by law to perform the Project, that Settling Defendants are unaware of any other person who is required by law to perform the Project, and that Settling Defendants will not use the Project, or

20

portion thereof, to satisfy any obligations that it may have under other applicable requirements of law.

37.    In connection with any communication to the public or to shareholders regarding Settling Defendants' actions or expenditures relating in any way to the Environmental Mitigation Project in this Amended Consent Decree, Settling Defendants shall include prominently in the communication "This project was undertaken in connection with the settlement of an enforcement action, *United States v. Georgia Pacific Chemicals LLC and Georgia Pacific Consumer Operations LLC*, taken on behalf of the U.S. Environmental Protection Agency and the Arkansas Department of Energy and Environment, Division of Environmental Quality under the Clean Air Act."

38.    Notwithstanding the foregoing paragraphs of this Section IX, the Permanent Shutdown of the Pulp Mill at the Consumer Facility will be deemed to satisfy all requirements of Section IX of this Amended Consent Decree.

## X.    REPORTING REQUIREMENTS

39.    Settling Defendants shall submit the following reports:

    a.    By July 31st and January 31st of each year after the lodging of this Amended Consent Decree, until termination of this Amended Decree pursuant to Section XXII (Termination), Settling Defendants shall submit to EPA a written, semi-annual progress report for 3 years. These reports, with the exception of those detailed in subparagraph 39(a)(1), shall also be submitted to DEQ. Each report shall include:

        (1)    Status and discussion of Settling Defendants' progress in satisfying their obligations in connection with the SEPs under Section VIII

21

and Appendix A or Appendix C including, at a minimum, a narrative description of activities undertaken, a summary of costs incurred since the previous report, any problems encountered or anticipated in implementing the SEPs, together with implemented or proposed solutions, until the time that one or more Settling Defendants submits all the SEP Completion Reports pursuant to Paragraph 27;

(2)   Status of any construction or installation of compliance measures described in Paragraph 19 of Section VII (Compliance Requirements);

(3)   Status of Settling Defendants' progress toward implementing and any problems encountered or anticipated in implementing the actions described in Paragraph 19 of Section VII (Compliance Requirements), together with implemented or proposed solutions; and

(4)   A summary of all permitting activity pertaining to compliance with Paragraph 19 of Section VII (Compliance Requirements) or Section VIII (Supplemental Environmental Projects) and the status of any necessary permit applications, as well as a copy of any application for a permit or permit amendment to address or comply with any provision of Paragraph 19 of Section VII (Compliance Requirements) or Section VIII (Supplemental Environmental Projects) and any resulting permit, as provided in Section XI

22

(Permits).

b.    The report shall also include a description of any non-compliance with the requirements of Paragraph 19 of Section VII (Compliance Requirements) or Section VIII (Supplemental Environmental Projects) and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If Settling Defendants violate, or have reason to believe that they may violate, any requirement of Paragraph 19 of Section VII (Compliance Requirements) or Section VIII (Supplemental Environmental Projects), Settling Defendants shall notify the EPA and DEQ of such violation and its likely duration, in writing, within ten working Days of the Day Settling Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Settling Defendants shall so state in the report. Settling Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Settling Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Settling Defendants of the obligation to provide the notice required by Section XIII (Force Majeure).

40.    Whenever any violation of this Amended Consent Decree or of any applicable permits or any other event affecting one or more Settlement Defendants' performance under this

23

Amended Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, one or more Settling Defendants shall notify EPA and DEQ orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Settling Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

41.     All reports shall be submitted to the persons designated in Section XVIII (Notices).

42.     Each report submitted by Settling Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

43.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

44.     The reporting requirements of this Amended Consent Decree do not relieve Settling Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

24

45.     Any information provided pursuant to this Amended Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Amended Consent Decree and as otherwise permitted by law.

46.     Should Settling Defendants Permanently Shutdown the Facilities, or any portion of the Facilities, covered by this Amended Consent Decree such that the Settling Defendants satisfy the corresponding requirements of Sections VII and VIII, then Settling Defendants shall be relieved of the reporting requirements set forth in Paragraph 39 associated with the satisfied requirements, but only with respect to matters occurring on or after the date of the Permanent Shutdown.

## XI.     PERMITS

47.     If Settling Defendants must obtain a federal, state, or local permit for any compliance obligation under this Amended Consent Decree, they shall submit timely and complete applications and timely take all other actions requested by the relevant permitting agency to obtain all such permits. Settling Defendants may seek relief under the provisions of Section XIII (Force Majeure) of this Amended Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit required to fulfill such obligation, if Settling Defendants have submitted timely and complete applications to obtain all such permits. If Settling Defendants fail to submit a timely permit application and timely take all other actions requested by the relevant permitting agency, Settling Defendants shall be barred from asserting a claim under Section XIII (Force Majeure) of the Amended Consent Decree that is based on delays in receiving necessary permits. The permit applications and process of incorporating the requirements of this Amended Consent Decree must be in accordance with applicable state or local Title V rules, including applicable

25

administrative amendment provisions of such rules. The Parties agree that the incorporation may be "by amendment" under 40 C.F.R. § 70.7(d) and analogous state Title V rules, where allowed by state law.

48.     For the GP Consumer Washers and GP Consumer Digesters, by no later than one hundred eighty (180) Days after the Effective Date, GP Consumer shall submit timely and complete applications to the applicable federal, state, or local air permitting authority, and take all other actions necessary, to obtain any pre-construction, construction, and operating permits required to install, construct, and operate components required under Paragraph 19 of Section VII (Compliance Requirements).

49.     The provisions of Section XIII (Force Majeure) of the Amended Consent Decree apply only for purposes of the Amended Consent Decree, and Settling Defendants shall not include them in a permit application submitted pursuant to this Section XI (Permits).

50.     This Amended Consent Decree shall not terminate until the requirements set forth under Paragraphs 19(a) and (b) of Section VII (Compliance Requirements) and of Section VIII (SEPs, including Appendix A or Appendix C, as applicable) are incorporated into a permanent and federally enforceable operating permit or non-Title V Permit or SIP amendment, and Settling Defendants have submitted any applications to incorporate the requirements into a Title V Permit.  Requirements incorporated into a federally enforceable permit, other operating permit, or SIP amendment pursuant to Section XII and Section VIII shall survive termination of this Amended Consent Decree.

51.     Should Settling Defendants Permanently Shutdown the Facilities, or any portion of the Facilities, covered by this Amended Consent Decree then Settling Defendants shall be

relieved of the permit requirements applicable to such Facilities in Section XI arising on or after the date of the Permanent Shutdown.

## XII.   STIPULATED PENALTIES

52.     Settling Defendants shall be liable for stipulated penalties to the United States and DEQ for violations of this Amended Consent Decree as specified below, unless excused under Section XIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Amended Decree, including any work plan or schedule approved under this Amended Decree, according to all applicable requirements of this Amended Decree and within the specified time schedules established by or approved under this Amended Decree. For purposes of this Paragraph, if Settling Defendants fail to pay the civil penalty owed to the United States, Settling Defendants shall pay such stipulated penalty to the United States; if Settling Defendants fail to pay the civil penalty owed to DEQ, Settling Defendants shall pay such stipulated penalty to DEQ.

53.     Late Payment of Civil Penalty. If Settling Defendants fail to pay the civil penalty required to be paid under Section VI (Civil Penalty) when due, Settling Defendants shall pay a stipulated penalty of $5,000.00 per Day for each Day that the payment is late.

54.     Failure to Meet Compliance Milestones. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VII (Compliance Requirements):

27

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $3,000 | 1st through 14th day |
| $4,000 | 15th through 30th day |
| $5,000 | 31st day and beyond |

55.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section X:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

56.    SEP Compliance.

a.    If Settling Defendants fail to satisfactorily meet the project schedules for each SEP within the timeframes set forth in Appendix A or Appendix C, Settling Defendants shall pay stipulated penalties for each Day for which they fail to satisfactorily meet the project schedules or complete the SEP, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,500 | 1st through 30th day |
| $2,500 | 30th through 60th day |
| $4,000 | 61st day and beyond |

b.    If Settling Defendants have not satisfactorily completed any of the SEPs within four years of the Effective Date of the Amended Consent Decree, the United States may elect to terminate the SEP if it determines that Settling Defendants are not making a good faith effort to satisfactorily complete the SEPs as required in Appendix A or Appendix C.  In addition, if at any time the United States determines that Settling Defendants have abandoned a SEP, the United States may terminate the SEP.  The United States shall provide written notice of SEP termination to Defendant.  If the United States

28

terminates the Tank SEP defined in Appendix A, Settling Defendants shall be liable for a lump sum stipulated penalty of $1.2 million.  If the United States terminates the Injection SEP defined in Appendix A, Settling Defendants shall be liable for a lump sum stipulated penalty of $600,000.  If the United States terminates the Monitoring SEP defined in Appendix A, Settling Defendants shall be liable for a lump sum stipulated penalty of $360,000.  If the United States terminates the Epi Storage SEP defined in Appendix C, Settling Defendants shall be liable for a lump sum stipulated penalty of $420,000. If the United States terminates the Vacuum Pump SEP defined in Appendix C, Settling Defendants shall be liable for a lump sum stipulated penalty of $420,000. If the United States terminates the Emergency Response SEP defined in Appendix C, Settling Defendants shall be liable for a lump sum stipulated penalty of $1,320,000.  If Settling Defendants pay a termination penalty under this Paragraph, they shall not be liable for further stipulated penalties under Paragraph 56(a).

57.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Amended Consent Decree.

58.     Settling Defendants shall pay stipulated penalties to the United States and DEQ within 30 Days of receipt of the written demand from either Plaintiff.   Settling Defendants shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to DEQ. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

59.    The United States or DEQ may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Amended Consent Decree.

60.    Stipulated penalties shall continue to accrue as provided in Paragraph 53, 54, 55, 56, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the Parties or by a decision of EPA or DEQ that is not appealed to the Court, Settling Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and DEQ within 30 Days of the Effective Date of the agreement or the receipt of EPA's or DEQ's decision or order.

b.    If the dispute is appealed to the Court and the United States or DEQ prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the District Court's decision, Settling Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

61.    Settling Defendants shall pay stipulated penalties owing to the United States or DEQ in the manner set forth and with the confirmation notices required by Paragraphs 12 and 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

62.    If Settling Defendants fail to pay stipulated penalties according to the terms of this Amended Consent Decree, Settling Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in

30

this Paragraph shall be construed to limit the United States or DEQ from seeking any remedy otherwise provided by law for Settling Defendants' failure to pay any stipulated penalties.

63.    The payment of penalties and interest, if any, shall not alter in any way Settling Defendants' obligation to complete the performance of the requirements of this Amended Consent Decree.

64.    Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Amended Consent Decree.  Subject to the provisions of Section XVI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Settling Defendants' violation of this Amended Decree or applicable law, including but not limited to an action against Settling Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures. However, the amount of any statutory penalty assessed for a violation of this Amended Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Amended Consent Decree.

## XIII.   FORCE MAJEURE

65.    "Force majeure," for purposes of this Amended Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Amended Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse

31

effects of the delay are minimized. "Force Majeure" does not include Settling Defendants'

financial inability to perform any obligation under this Amended Consent Decree.

66.     If any event occurs or has occurred that may delay the performance of any

obligation under this Amended Consent Decree, whether or not caused by a force majeure event,

Settling Defendants shall provide notice orally or by electronic or facsimile transmission to EPA

and DEQ no more than 72 hours of when Settling Defendants first knew that the event might

cause a delay. Within seven days thereafter, Settling Defendants shall provide in writing to EPA

and DEQ an explanation and description of the reasons for the delay; the anticipated duration of

the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for

implementation of any measures to be taken to prevent or mitigate the delay or the effect of the

delay; Settling Defendants' rationale for attributing such delay to a force majeure event if they

intend to assert such a claim; and a statement as to whether, in the opinion of Settling

Defendants, such event may cause or contribute to an endangerment to public health, welfare or

the environment. Settling Defendants shall include with any notice all available documentation

supporting the claim that the delay was attributable to a force majeure. Failure to comply with

the above requirements shall preclude Settling Defendants from asserting any claim of force

majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance

of which Settling Defendants, any entity controlled by Settling Defendants, or Settling

Defendants' contractors knew or should have known.

67.     If EPA, after a reasonable opportunity for review and comment by DEQ, agrees

that the delay or anticipated delay is attributable to a force majeure event, the time for

performance of the obligations under this Amended Consent Decree that are affected by the force

32

majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

68.     If EPA, after a reasonable opportunity for review and comment by DEQ, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendants in writing of its decision.

69.     If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIV (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 65-69. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Amended Consent Decree identified to EPA and the Court.

## XIV.   DISPUTE RESOLUTION

70.     Unless otherwise expressly provided for in this Amended Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Amended Consent Decree. Settling Defendants' failure to seek resolution of a dispute under this Section shall preclude Settling Defendants from

33

raising any such issue as a defense to an action by the United States or DEQ to enforce any obligation of Settling Defendants arising under this Amended Decree.

71.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Amended Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Settling Defendants send the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within seven Days after the conclusion of the informal negotiation period, Settling Defendants invoke formal dispute resolution procedures as set forth below.

72.     Formal Dispute Resolution.  Settling Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Settling Defendants' position and any supporting documentation relied upon by Settling Defendants.

73.     The United States shall serve its Statement of Position within 45 Days of receipt of Settling Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Settling Defendants, unless Settling Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

34

74.      In the event that the United States and DEQ are unable to reach agreement among themselves with regard to the Settling Defendant's claim, the position of the United States shall be the final position.

75.      Settling Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Settling Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Amended Consent Decree.

76.      The United States shall respond to Settling Defendants' motion within the time period allowed by the Local Rules of this Court. Settling Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

77.      Standard of Review.

a.      Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Amended Consent Decree, in any dispute brought under Paragraph 61 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Amended Consent Decree; the adequacy of the performance of work undertaken pursuant to this Amended Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Settling Defendants shall have the burden of demonstrating, based on the administrative record,

35

that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

  b.  Other Disputes. Except as otherwise provided in this Amended Consent Decree, in any other dispute brought under Paragraph 70, Settling Defendants shall bear the burden of demonstrating that their position complies with this Amended Consent Decree and better further the objectives of the Amended Consent Decree.

  78.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Settling Defendants under this Amended Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 60. If Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XII (Stipulated Penalties).

## XV. INFORMATION COLLECTION AND RETENTION

  79.  The United States, and DEQ, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Amended Consent Decree, at all reasonable times, upon presentation of credentials, to:

  a.  monitor the progress of activities required under this Amended Consent Decree;

  b.  verify any data or information submitted to the United States in accordance with the terms of this Amended Consent Decree;

  c.  obtain samples and, upon request, splits of any samples taken by Settling Defendants or its representatives, contractors, or consultants;

36

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess Settling Defendants' compliance with this Amended Consent

Decree.

    80.    Upon request, Settling Defendants shall provide EPA or its authorized representatives splits of any samples taken by Settling Defendants. Upon request, EPA shall provide Settling Defendants splits of any samples taken by EPA.

    81.    Until three years after the termination of this Amended Consent Decree, Settling Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Settling Defendants' performance of its obligations under this Amended Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Settling Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

    82.    At the conclusion of the information-retention period provided in the preceding Paragraph, Settling Defendants shall notify the United States and DEQ at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or DEQ, Settling Defendants shall deliver any such documents, records, or other information to EPA. Settling Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a

37

privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Settling Defendants. However, no documents, records, or other information created or generated pursuant to fulfilling the requirements of this Amended Consent Decree shall be withheld on grounds of privilege.

83.     Settling Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Settling Defendants seek to protect as CBI, Settling Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

84.     This Amended Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or DEQ pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Settling Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XVI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

85.     This Amended Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

86.     The United States and DEQ reserves all legal and equitable remedies available to enforce the provisions of this Amended Consent Decree. This Amended Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit

38

conditions. The United States and DEQ further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Settling Defendants' Facilities, whether related to the violations addressed in this Amended Consent Decree or otherwise.

87.     In any subsequent administrative or judicial proceeding initiated by the United States or DEQ for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or Settling Defendants' violations, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DEQ in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 85.

88.     This Amended Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Settling Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Settling Defendants' compliance with this Amended Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and DEQ do not, by their consent to the entry of this Amended Consent Decree, warrant or aver in any manner that Settling Defendants' compliance with any aspect of this Amended Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

89.     This Amended Consent Decree does not limit or affect the rights of Settling

Defendants or of the United States or DEQ against any third parties, not party to this Amended

Consent Decree, nor does it limit the rights of third parties, not party to this Amended Consent

Decree, against Settling Defendants, except as otherwise provided by law.

90.     This Amended Consent Decree shall not be construed to create rights in, or grant

any cause of action to, any third party not party to this Amended Consent Decree.

## XVII.    COSTS

91.     The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States and DEQ shall be entitled to collect the costs (including attorneys'

fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Settling Defendants.

## XVIII.    NOTICES

92.     Unless otherwise specified in this Amended Decree, whenever notifications,

submissions, or communications are required by this Amended Consent Decree, they shall be

made electronically as follows:

As to the United States (EPA and DOJ) by email:

   a.     EES Case Management Unit at eescdcopy.enrd@usdoj.gov: Re: DOJ #
          90-5-2-1-11705; and

   b.     EPA by email through the Consent Decree Reporting System:  Register
          and upload Consent Decree submittals at https://cdx.epa.gov.

As to the State of Arkansas by email:

   c.     Tom Rheume: rheaume@DEQ.state.ar.us
As to GP Consumer by email: Anthony Robinson at anthony.robinson1@gapac.com and

40

John C. Bottini at john.bottini@gapac.com.

As to GP Chemicals by email: Jerry Morris at jwmorris@gapac.com and John C. Bottini at john.bottini@gapac.com.

93.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

94.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Amended Consent Decree or by mutual agreement of the Parties in writing.

## XIX.    EFFECTIVE DATE

95.    The Effective Date of this Amended Consent Decree shall be the date upon which this Amended Consent Decree is entered by the Court or a motion to enter the Amended Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Settling Defendants hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Amended Consent Decree before entry, or the Court declines to enter the Amended Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XX.    RETENTION OF JURISDICTION

96.    The Court shall retain jurisdiction over this case until termination of this Amended Consent Decree, for the purpose of resolving disputes arising under this Amended Decree or entering orders modifying this Amended Decree, pursuant to Sections XIV and XXI, or effectuating or enforcing compliance with the terms of this Amended Decree.

41

## XXI.   MODIFICATION

97.     The terms of this Amended Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Amended Decree, it shall be effective only upon approval by the Court.

98.     Any disputes concerning modification of this Amended Decree shall be resolved pursuant to Section XIV (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 77, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXII.   TERMINATION

99.     After Settling Defendants have completed the requirements of Section VII (Compliance Requirements), have maintained continuous satisfactory compliance with this Amended Consent Decree and the permits required by this Amended Consent Decree for a period of one year, have completed all other requirements of this Amended Consent Decree, including those relating to the SEPs required by Section VIII and Appendix A or Appendix C, and the Mitigation Project required by Section IX and Appendix B, applied and obtained the required permits as described by Section XI (Permits), and have paid the civil penalty and any accrued stipulated penalties as required by this Amended Consent Decree, Settling Defendants may serve upon the United States and DEQ a Request for Termination, stating that Settling Defendants have satisfied those requirements, together with all necessary supporting documentation.

42

100.    Following receipt by the United States and DEQ of Settling Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Settling Defendants have satisfactorily complied with the requirements for termination of this Amended Consent Decree. If the United States, after consultation with DEQ, agrees that the Amended Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Amended Decree.

101.    If the United States, after consultation with DEQ, does not agree that the Amended Decree may be terminated, Settling Defendants may invoke Dispute Resolution under Section XIV. However, Settling Defendants shall not seek Dispute Resolution of any dispute regarding termination until 120 days after service of its Request for Termination.

## XXIII.    PUBLIC PARTICIPATION

102.    This Amended Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Amended Consent Decree disclose facts or considerations indicating that the Amended Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to entry of this Amended Consent Decree without further notice and agree not to withdraw from or oppose entry of this Amended Consent Decree by the Court or to challenge any provision of the Amended Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Amended Decree.

43

## XXIV.   SIGNATORIES/SERVICE

103.    Each undersigned representative of Settling Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Amended Consent Decree and to execute and legally bind the Party he or she represents to this document.

104.    This Amended Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Settling Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Amended Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Amended Consent Decree.

## XXV.   INTEGRATION

105.    This Amended Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Amended Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Amended Consent Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Amended Consent Decree.

44

## XXVI.   FINAL JUDGMENT

106.   Upon approval and entry of this Amended Consent Decree by the Court, this Amended Consent Decree shall constitute a final judgment of the Court as to the United States and Settling Defendants.

## XXVII.   26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

107.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section IV (Applicability), Paragraph 7 (excluding any activities in connection with the performance of a SEP), Section VII (Compliance Requirements), Paragraphs 15-19, Section IX (Environmental Mitigation), Paragraphs 35 and 36, Section X (Reporting Requirements), Paragraphs 39(a)(2)-(4), 39(b) and 41-42 (excluding Reporting Requirements set forth in Appendix A or Appendix C), Section XI (Permits), Paragraphs 47-51 (excluding any activities in connection with the performance of a SEP), and Section XV (Information Collection and Retention), Paragraphs 79-84, is restitution or required to come into compliance with law.

## XXVIII.   APPENDICES

108.   The following Appendices are attached to and part of this Amended Consent Decree:

"Appendix A" is the Supplemental Environmental Projects;

"Appendix B" is the Environmental Mitigation Project; and

"Appendix C: is the Alternate Supplemental Environmental Projects.

Dated and entered this 4ᵗʰ day of _June_, 2020

_____
UNITED STATES DISTRICT JUDGE

45

FOR THE UNITED STATES OF AMERICA:

_2-3-20_
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

SAMUEL D. BLESI
(DC Bar # 417818)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
202-514-1466
Sam.Blesi@usdoj.gov

United States Attorney
DAVID CLAY FOWLKES
United States Attorney
Western District of Arkansas

CANDACE L. TAYLOR,
Arkansas Bar Number 98083
Assistant United States Attorney
414 Parker Avenue
Fort Smith, AR 72901
Telephone: 479-494-4074
E-mail: Candace.Taylor@usdoj.gov

46

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


Cheryl T. Seager
Director, Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency, Region 6


Cheryl M. Barnett
Assistant Regional Counsel
U.S. EPA, Region 6 (6RC-EA)
Office of Regional Counsel
1445 Ross Avenue
Dallas, Texas 75202
214-665-8328

47

FOR THE ARKANSAS DEPARTMENT OF ENERGY
AND ENVIRONMENT, DIVISION OF
ENVIRONMENTAL QUALITY


Becky W. Keogh
Director of DEQ
5301 Northshore Drive
North Little Rock, Arkansas 72118


Tracy R. Rothermel, 2003005
Senior Attorney, Arkansas Department of Energy and
Environmental, on behalf of the Division of Environmental
Quality
5301 Northshore Drive
North Little Rock, Arkansas 72118
(501)682-0743

Case 1:18-cv-01076-SOH   Document 19   Filed 06/05/20   Page 51 of 67 PageID #: 420

FOR GEORGIA-PACIFIC CONSUMER OPERATIONS
LLC:

1/30/20
Date

Montoya E. Brown
SVP – Consumer Products Group Operations
133 Peachtree Street N.E.
Atlanta, Georgia 30303

49

FOR GEORGIA-PACIFIC CHEMICALS LLC:

1/30/20

Date

Hudson A. Pope
SVP – Building Products Operations
133 Peachtree Street N.E.
Atlanta, Georgia 30303

50

### Appendix A

## SUPPLEMENTAL ENVÍRONMENTAL PROJECTS

### I.  PURPOSE/INTRODUCTION

A.      Consistent with and as provided in the "2015 Update to EPA's Supplemental Environmental Projects Policy," and pursuant to Section VIII ("Supplemental Environmental Projects") of this Amended Consent Decree, and in accordance with the specifications and provisions in this Appendix, Settling Defendants shall undertake the three Supplemental Environmental Projects ("SEPs") described herein. Settling Defendants shall spend at least $1,800,000 to implement the SEPs described below. These SEPs are environmentally beneficial projects which Settling Defendants have agreed to undertake in settlement of this enforcement action, but which Settling Defendants are not otherwise legally required to perform. The SEPs shall be focused on reducing hydrogen sulfide ($H_2S$) emissions and odor from the Facilities.

B.      The compliance deadlines for the SEPs may be extended by a written, mutual agreement between the United States and Settling Defendants.

C.      The projects described below consist of measures designed to (1) reduce or stabilize the flow of sulfides and other wastewater constituents to the facility's wastewater treatment system ("WWTS") (Pulp Mill Collection Tank), (2) minimize anaerobic conditions within the WWTS (Oxygen Injection System), and (3) continue data collection efforts to inform ongoing and future efforts to reduce $H_2S$ and odor (Fenceline $H_2S$ Monitoring).

### II.  DESCRIPTION OF SUPPLEMENTAL ENVIRONMENTAL PROJECTS

### A.  Pulp Mill Collection Tank ("Tank SEP")

1.      SEP Description.  During current Pulp Mill operations, process upsets can cause

51

spikes in the organic loading rates into the WWTS. These episodic events can create temporary

swings in pH and sulfide content within the WWTS which, in turn, can impact $H_2S$ emission

levels. The Tank SEP will consist of the installation of a Pulp Mill collection tank to allow the

Pulp Mill to recycle pulping liquors and fiber back into the process as well as more tightly

control the organic loading rates into the WWTS. The Tank SEP is designed to reduce the impact

that process variability can have on the WWTS. The collection tank shall consist of an

approximately 600,000-gallon tank to be in the vicinity of the Consumer Facility's Line 2

Washer (SN-34). The tank shall be used as a diversion point for pulping liquors, fiber, and

condensates that would otherwise travel directly to the Pulp Mill sewer in the event of a process

imbalance. The material collected in the tank either would be reclaimed back into the process or

metered to the sewer in a controlled manner. The tank shall be classified as a weak black liquor

storage tank and shall require a minor air permit modification from the Arkansas Department of

Energy and Environment, Division of Environmental Quality ("DEQ") prior to installation.

    2.    Project Requirements:

        a.    Settling Defendants shall submit timely and complete applications to the applicable federal, state, or local air permitting authority, and take all other actions necessary, to obtain any pre-construction, construction, and operating permits required to install, construct, and operate components required for this Tank SEP.

        b.    Settling Defendants shall keep a daily record of tank volume as well as the aggregate rate of flow of pulping liquors, fiber, and condensates into and out of the collection tank.

        c.    Settling Defendants shall create and implement standard operating

procedures ("SOP") for the usage and maintenance of the collection tank. The SOP shall be reviewed and updated as needed, and be provided upon request.

3. Project Schedule:

   a. By no later than ninety (90) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall submit all permit applications required for the Tank SEP.

   b. By no later than sixty (60) days after receipt of the necessary permits, Settling Defendants shall initiate the construction and installation of the components required for the Tank SEP.

   c. By no later than one hundred and eighty (180) days after receipt of the necessary permits, Settling Defendants shall begin operation and implementation of the Tank SEP.

   d. The Tank SEP is considered completed after successful operation and implementation for a duration of no less than one hundred and eighty (180) days.

4. Expenditures. The expenditures for this Tank SEP shall total no less than $1,000,000.

5. Reporting. In addition to the reporting requirements of Paragraph 39, Settling Defendants shall include a summary of daily inflow, outflow and tank content volume for the reporting period.

B. Oxygen Injection System ("Injection SEP")

   1. SEP Description. Current operations can result in anaerobic conditions within the

53

WWTS, resulting in increased potential for $H_2S$ emissions and increased sulfide loading. The Injection SEP will initiate the installation of a system within the WWTS to inject dissolved oxygen into the wastewater stream with the intention to minimize the anaerobic conditions within the WWTS which, in turn, would reduce $H_2S$ emissions. The introduced dissolved oxygen oxidizes $H_2S$, transforming the $H_2S$ into sulfate and reducing $H_2S$ emissions and odor. The Injection SEP includes the procurement and installation of a stone and concrete slab foundation, dissolved oxygen tank, vaporizer, injection system, associated utility (water and electric) connections, and a dissolved oxygen probe in the wastewater stream that would continuously monitor the dissolved oxygen content in the passing stream. Settling Defendants may elect to generate the required dissolved oxygen on-site, in which case the scope of this project will include the procurement and installation of an oxygen generator in place of the dissolved oxygen tank and vaporizer.

      2.    Project Requirements:

          a.    If deemed necessary by the permitting authority, Settling Defendants shall submit timely and complete applications to the applicable federal, state, or local water permitting authority, and take all other actions necessary, to obtain any pre-construction, construction, and operating permits required to install, construct, and operate components required for this Injection SEP.

          b.    Settling Defendants shall keep a record of all invoices of purchased dissolved oxygen and all certifications/calibrations of the dissolved oxygen probe.

          c.    Settling Defendants shall create and implement standard operating

procedures ("SOP") for the usage and maintenance of the oxygen injection system. The SOP should be reviewed and updated as needed, and be provided upon request.

3.    Project Schedule:

    a.    By no later than ninety (90) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall submit all permit applications that may be required for the Injection SEP.

    b.    By no later than sixty (60) days after receipt of any necessary permits, Settling Defendants shall initiate the construction and installation of the components required for the Injection SEP. If no permitting is required, Settling Defendants shall initiate the construction and installation of the components required for the Injection SEP by no later than ninety (90) days after the Effective Date.

    c.    By no later than three hundred and sixty-five (365) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall begin operation and implementation of the Injection SEP. In the event permitting is required for the Injection SEP, Settling Defendants shall begin operation and implementation of the Injection SEP no later than one-hundred and eighty (180) days after the receipt of any necessary permits.

    d.    The Injection SEP is considered completed after successful operation and implementation for a duration of no less than one hundred and eight (180) days.

4.      Expenditures:  The expenditures for this Injection SEP shall total no less than $500,000.

5.      Reporting:  Settling Defendants shall include the Injection SEP in the semi-annual reports as required by Paragraph 39 until the completion date specified in Paragraph B.3(d) of this Appendix. Settling Defendants shall specify where on the Consumer Facility the Injection SEP will be located after it is installed and in operation.

C.   **Fenceline H₂S Monitoring ("Monitoring SEP")**

1.      SEP Description.  Beginning in 2014, Settling Defendants voluntarily commenced continuous $H_2S$ monitoring and has continued this monitoring effort in response to input from the local community. The monitoring is performed by a third-party consultant pursuant to a Quality Assurance Project Plan ("QAPP") that EPA and the Arkansas Department of Health ("ADH") have both reviewed. The community will benefit from having access to real-time, on-line monitoring data, provided on a public-facing website maintained by Settling Defendants. At two-week intervals, summaries of the monitoring data will be posted. In the event of any 30-minute rolling average reading that exceeds the voluntary trigger of 70 ppb, Settling Defendants will post an event-specific announcement on this same website. The Monitoring SEP will continue for no less than three years from the date that the public facing website is made available and announced to the community.

2.      Project Requirements:

a.      Settling Defendants shall update and revise their 2014 QAPP entitled, "Quality Assurance Project Plan - Hydrogen Sulfide Monitoring at the Georgia Pacific Crossett Mill" to reflect the changes of this Appendix.

b.      Settling Defendants shall post the data and information on a public-facing

56

website. Settling Defendants shall post two-week summaries within fifteen (15) days of the end of each two-week period and event-specific announcements within two business days of events during which the 30-minute rolling average reading exceeds the voluntary trigger of 70 ppb. Settling Defendants shall maintain the data and information collected on the aforementioned website through no less than one year after SEP is complete.

c.    Settling Defendants shall provide notice to the community announcing the web address and date that the public-facing website has become available.

d.    Settling Defendants shall post the SEP Completion Report required under Paragraph 27 of this Amended Consent Decree on the website, with any confidential information redacted, at the same time as the submission to EPA.

3.    Project Schedule:

a.    By no later than one hundred and eighty (180) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall build and make available a public-facing website, providing access to real-time monitoring data and summary reports required by this Monitoring SEP.

b.    By no later than one hundred and eighty (180) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall migrate the historical reports currently housed on the DEQ website to the new public-facing website.

c.    Settling Defendants shall maintain and operate continuous monitoring,

57

subject to allowances for monitor downtime and connectivity/internet availability set forth in the QAPP, and the aforementioned website for no less than 3 years from the date the website is officially available.

4.      Expenditures.  The expenditures for this Monitoring SEP shall total no less than $300,000.

5.      Reporting.  As part of the semi-annual progress reports required pursuant to Paragraph 39, Settling Defendants shall include a summary of exceedances of the 30 minute average of the voluntary trigger of 70 ppb, any corrective actions taken, instrumentation downtime, website downtime, and the official start date of the Monitoring SEP.

### III.    **SEP COMPLETION REPORTS**

Within 45 days after the date set for completion of each SEP, Settling Defendants shall submit a SEP Completion Report to the United States in accordance with Paragraph 27 and this Appendix.

58

## Appendix B

ENVIRONMENTAL MITIGATION PROJECT

### I.  PURPOSE/INTRODUCTION

Consistent with and as provided in the November 14, 2012 "Securing Mitigation as Injunctive Relief in Certain Civil Enforcement Settlements (2nd edition)," the Environmental Mitigation Project described herein is an environmentally beneficial project sought by the United States to remedy, reduce, or offset past and ongoing harm which, without admission of liability, Settling Defendants agreed to undertake in settlement of this civil enforcement action.

### II.     DESCRIPTION OF ENVIRONMENTAL MITIGATION PROJECT

#### A.     Dregs Filter Project

1.   Project Description:

Settling Defendants installed and operate a new dregs pre-coat filter to more efficiently remove insoluble compounds (called "dregs") from green pulping liquor. The project was implemented to assist with Settling Defendants' hydrogen sulfide and odor reduction efforts by reducing sulfide loading to the Consumer Facility's wastewater treatment system. This sulfide loading reduction was achieved by replacing the Consumer Facility's existing dregs washer system with a pre-coat filter that reduced the discharge of dregs and associated green liquor of the wastewater treatment system.

The Dregs Filter Project is environmentally beneficial by preventing the emission of hydrogen sulfide in the wastewater treatment system by directly reducing the sulfide loading into the wastewater treatment system.

2.   Expenditures: The total cost of this Project was approximately $2.9 million.

59

### Appendix C

ALTERNATE SUPPLEMENTAL ENVIRONMENTAL PROJECTS

#### I.       PURPOSE/INTRODUCTION

A. Consistent with and as provided in the "2015 Update to EPA's Supplemental
Environmental Projects Policy," and pursuant to Section VIII ("Supplemental Environmental
Projects") of this Amended Consent Decree, and in accordance with the specifications and
provisions in this Appendix, Settling Defendants shall undertake the three Supplemental
Environmental Projects ("SEPs") described herein. Settling Defendants shall spend at least
$1,800,000 to implement the SEPs described below. These SEPs are environmentally beneficial
projects which Settling Defendants have agreed to undertake in settlement of this enforcement
action, but which Settling Defendants are not otherwise legally required to perform. The SEPs
shall be focused on enhancing the emergency response capabilities in the local community and
reducing the potential for air emissions from the Facilities.

B. The compliance deadlines for the SEPs may be extended by a written, mutual
agreement between the United States and Settling Defendants.

C. The projects described below consist of measures designed to (1) enhance the
emergency response capabilities of the local community's first responders in the event of a
chemical release or spill; (2) reduce the potential for air emissions, including hazardous air
pollutants ("HAPs") and volatile organic compounds ("VOCs"), from certain processes within
the GP Chemical facility.

#### II. DESCRIPTION OF SUPPLEMENTAL ENVIRONMENTAL PROJECTS

A. **Epichlorohydrin Temporary Storage ("Epi Storage SEP")**

60

1.    SEP Description. The GP Chemicals Facility is currently subject to the provisions of EPA's Risk Management Program on account of the storage and use of Epichlorohydrin ("Epi"), among other substances. Of the release scenarios GP Chemicals is required to analyze as part of its off-site consequences analysis in the facility's RMP plan, a potential release of Epi from the facility's temporary, trailer-based storage system poses the greatest potential off-site impact due to the large surface area of the secondary containment surrounding this storage system. To reduce the size of potential impact of any off-site consequence associated with a release of Epi from the temporary storage system, GP Chemicals shall re-configure the permanent Epi storage capability through the addition of a storage tank to eliminate the trailer-based storage system currently in use.

2.    Project Requirements.

   a.    If deemed necessary by the permitting authority, Settling Defendants shall submit timely and complete applications to the applicable federal, state, or local permitting authority, and take all other actions necessary, to obtain any pre-construction, construction and operating permits required to install, construct, and operate components required for this Epi Storage SEP.

   b.    Settling Defendants shall keep a record of all invoices of all equipment and services required to complete the Epi Storage SEP.

3.    Project Schedule.

   a.    By no later than ninety (90) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall submit all permit applications required for the Epi Storage SEP.

61

b.    By no later than two-hundred and seventy (270) days after receipt of the necessary permits or the Effective Date, whichever is later, Settling Defendants shall begin operation of the Epi Storage SEP.

c.    The Epi Storage SEP is considered completed after successful operation and implementation for a duration of no less than one year.

4.    Expenditures. The expenditures for this Epi Storage SEP shall total no less than $350,000.

5.    Reporting. Settling Defendants shall include the Epi Storage SEP in the semi-annual reports as required by Paragraph 39 until the completion date specified in Paragraph A.3.c of this Appendix.

B. **Vacuum Pump System Replacement ("Vacuum Pump SEP")**

1.    SEP Description. The GP Chemicals Facility currently utilizes a vacuum pump system to evacuate emissions from the kettles used to manufacture thermosetting resins. The vacuum pumps utilize water seals arranged in a lined, water-filled sump that is partially exposed to the atmosphere. The current system is permitted as a potential source of fugitive emissions of HAPs and VOCs through the absorption of constituents from the kettle exhaust air into the sump water and in the event of an upset event that breaks one or more of the pump's water seals. The Vacuum Pump SEP will involve the replacement of the current vacuum pump system with an enclosed unit designed to reduce fugitive emissions.

2.    Project Requirements.

a.    If deemed necessary by the permitting authority, Settling Defendants shall submit timely and complete applications to the applicable federal, state, or local permitting authority, and take all other actions necessary, to obtain

62

any pre-construction, construction and operating permits required to

install, construct, and operate components required for this Vacuum Pump

SEP.

b.     Settling Defendants shall keep a record of all invoices of all equipment

and services required to complete the Vacuum Pump SEP.

3.     Project Schedule.

a.     By no later than ninety (90) days after the Effective Date of the Amended

Consent Decree, Settling Defendants shall submit all permit applications

required for the Vacuum Pump SEP.

b.     By no later than two-hundred and seventy (270) days after receipt of the

necessary permits or the Effective Date, whichever is later, Settling

Defendants shall begin operation of the Vacuum Pump SEP.

c.     The Vacuum Pump SEP is considered completed after successful

operation and implementation for a duration of no less than one hundred

eighty (180) days.

4.     Expenditures. The expenditures for this Vacuum Pump SEP shall total no less

than $350,000.

5.     Reporting. Settling Defendants shall include the Vacuum Pump SEP in the semi-

annual reports as required by Paragraph 39 until the completion date specified in Paragraph B.3.c

of this Appendix.

C. **City of Crossett Fire Department Emergency Response Vehicle SEP ("Emergency Response SEP")**

1.      SEP Description.  The City of Crossett, Arkansas Fire Department has a stated need for a long-ladder fire truck to assist with responding to emergencies, including those that may involve the release of hazardous substances. This Emergency Response SEP will consist of the purchase of a long-ladder fire truck for the City of Crossett Fire Department. The truck will be an E-One HPS100 Platform, or a different make and model with similar capabilities (the "Emergency Response Vehicle").

2.      Project Requirements.

a.      Settling Defendants shall purchase and transfer title to the Emergency Response Vehicle to the City of Crossett's Fire Department.

b.      Settling Defendants shall keep a record of all invoices of equipment required to complete the Emergency Response SEP.

3.      Project Schedule.

a.      By no later than one hundred and eighty (180) days after the Effective Date of the Amended Consent Decree, Settling Defendants shall purchase and transfer title to the Emergency Response Vehicle to the City of Crossett's Fire Department.

b.      The Emergency Response SEP is considered completed upon transfer of title to the Emergency Response Vehicle to the City of Crossett Fire Department.

4.      Expenditures. The expenditures for this Emergency Response SEP shall total no less than $1,100,000.

5.      Reporting. Settling Defendants shall include the Emergency Response SEP in the semi-annual reports as required by Paragraph 39 until the completion date specified in Paragraph C.3.b of this Appendix.

### III.      <u>SEP COMPLETION REPORTS</u>

Within forty-five (45) days after the date set for completion of each SEP, Settling Defendants shall submit a SEP Completion Report to the United States in accordance with Paragraph 27 and this Appendix.

65